IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| DOUGLAS J. CHEATHAM and | ) Case No. 07-40509-13-abf |
| STACY L. CHEATHAM, | ) |
| | ) |
| Debtors. | ) |

ORDER SETTING REHEARING ON OBJECTION TO CONFIRMATION

Debtors Douglas and Stacy Cheatham filed a voluntary Chapter 13 petition on February 21, 2007, listing a 2000 Chevrolet Silverado pickup as an asset valued at $5,000, and identifying Wachovia Dealer Services f/k/a WFS Financial, Inc. ("Wachovia") as a secured creditor with a lien on the truck. Under § 1325(a)(4) and (5), the Debtors' plan must propose to pay the secured portion of Wachovia's claim. The truck is not a "hanging paragraph" 910-vehicle under § 1325(a), so § 506 valuation is applicable here.[1] Hence, Wachovia's claim is a secured claim only to the value of the Silverado. Wachovia asserts a total claim of $7,481.11 which, it says, is fully secured because the truck exceeds that amount in value. The Debtors assert that the Silverado is worth only $5,500, so their plan proposes to pay that amount as a secured claim, and the remainder as a general unsecured claim. Wachovia objects.

By way of background, this case has encountered some procedural difficulties with regard to Wachovia's objections to the Debtors' proposed plans, an explanation of which may be helpful to establish the context of the evidence discussed in this Order. On May 7,

---

[1] 11 U.S.C. § 1325(a)(*).

2007, this Court held a hearing on Wachovia's objection to confirmation, at the conclusion of which the Court directed Wachovia's counsel to submit additional evidence on valuation, based on Debtor Douglas Cheatham's testimony as to the Silverado's condition. Wachovia failed to submit the updated valuation evidence, but the Court (mistakenly) sustained Wachovia's objection to confirmation. Thereafter, the Debtor filed an amended plan which did not list Wachovia at all. Wachovia objected to that amended plan, attaching updated NADA valuation documentation to that objection. In order to sort out the confusion regarding valuation and the plans' treatment of Wachovia, the Court sustained Wachovia's most recent objection to confirmation of the amended plan, and directed the Debtors to file another amended plan specifying the treatment to be accorded to Wachovia. In the event that the newly-amended plan again attempted to strip down Wachovia's claim, the Court would then enter a ruling on value, based on the evidence already submitted by the parties.

The Debtors' current plan (the Third Amended Plan) proposes to treat Wachovia's claim as secured in the amount of $5,500, with the remainder of Wachovia's claim being treated as a general unsecured claim. Hence, the question of the Silverado's value is again at issue.

Although Wachovia has now filed a Proof of Claim in which it continues to assert that its $7,481.11claim is fully secured, the Debtors have not yet objected to it. Rather, the issue of the truck's valuation has arisen here in the context of Wachovia's objection to plan confirmation, not in the context of claim allowance. One court has suggested that resolving what amounts to a claim objection in a plan confirmation proceeding could be procedural

error, particularly if the creditor is not aware that its claim is at issue.[2]  However, if the parties voluntarily proceed in this manner, and the confirmation proceeding is essentially a two-party dispute over the value of the creditor's secured claim, then any procedural defect is both waived and harmless.[3]  Indeed, proceeding in this manner is commonplace in this district,[4] and benefits all parties because it promotes prompt confirmation of plans and, hence, prompt payments to creditors by the Chapter 13 Trustee.  Here, consistent with that practice, it is evident from Wachovia's pleadings and evidence that it has proceeded as if this were a claim valuation matter.

That being the case, because valuation in the plan confirmation context implicates claim allowance, it is appropriate to apply the burden of providing evidence normally applicable in the claims allowance context.

> Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a properly executed proof of claim is prima facie evidence of the validity and amount of the claim.  A party in interest may, however, file a written objection to a proof of claim.  If an objection to a claim is supported by sufficient evidence to rebut the presumption, the burden of proving the validity and amount of the claim shifts back to the claimant.  In other words, once sufficient evidence is offered to rebut the prima facie validity of a proof of claim, the respective parties have the same burden of proof they would have under non-bankruptcy law.[5]

---

[2] *In re Garvida*, 347 B.R. 697, 703-04 (B.A.P. 10th Cir. 2006).

[3] *Id.*

[4] In fact, as it did in this case, plan confirmation sometimes occurs in this district even before the claims bar date passes.  The claims bar date in this case is June 20, 2007.

[5] *In re Revelle*, 256 B.R. 905, 910 (Bankr. W.D. Mo. 2001) (*citing Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *Brown v. Internal*

As discussed in more detail below, the Debtor testified as to value at the May 7 hearing. That evidence was sufficient to rebut the prima facie validity of Wachovia's claim as to the truck's value. Thus, the initial burden of proving value shifted to Wachovia.

Many courts, including this one, have commonly used the Kelley Blue Book (the "Blue Book") or the National Automobile Dealers Association ("NADA") values as a starting point for valuation, subject to adjustment if the value does not accurately reflect the true value of the vehicle.[6] Here, the Debtor values the truck between $5,000 and $5,500, a valuation he testified he obtained from the Blue Book's website. In response, Wachovia submitted an NADA valuation, which it asserts is $10,775.

Prior to the BAPCPA amendments to the Code,[7] partly in an attempt to alleviate the burden on parties of having to present valuation evidence in every single Chapter 13 case involving a vehicle, the bankruptcy judges in this district adopted an approach under which the starting point in the valuation of an automobile retained by a reorganizing debtor would be the NADA retail value decreased by 5%.[8] This determination was based on an

---

*Revenue Service (In re Brown)*, 82 F.3d 801, 804 (8th Cir. 1996); *In re Interco Inc.*, 211 B.R. 667, 677 (Bankr. E. D. Mo. 1997); *In re Hydorn*, 94 B.R. 608, 612 (Bankr. W.D. Mo. 1988); Fed. R. Bankr. P. 3001(f) and 3007).

[6] *See In re De Anda-Ramirez*, 359 B.R. 794, 796 (B.A.P. 10th Cir. 2007); *see also In re Bryan*, 318 B.R. 708, 711 (Bankr. W.D. Mo. 2004).

[7] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[8] *See In re Podnar*, 307 B.R. 667, 671 n.6 (Bankr. W.D. Mo. 2003) ("The bankruptcy judges for the Western District of Missouri . . . have adopted a 'starting point' valuation standard in Chapter 13 cases whereby the replacement value of a motor vehicle is set at the [NADA] retail value less five percent."); *In re Renzelman*, 227 B.R. 740 (Bankr. W.D. Mo. 1998). In *Renzelman*, I sometimes referred to NADA as "the Blue Book." They are, however, quite

4

interpretation of the effect of the Supreme Court's decision in *Associates Commercial Corp. v. Rash*.[9] But, if either party wished to present evidence of replacement value that varied from that starting point, they were free to do so.[10]

The BAPCPA amendments added a new definition of "replacement value" in § 506(a)(2):

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.[11]

This definition did clarify that a court is to use retail merchant values, taking the condition of the vehicle into account, and using the value at the time the determination is being made.

With this in mind, I start with Wachovia's assertion that $10,775 is the price a retail merchant would charge for a similar truck, considering its current age and condition. That

---

clearly distinguishable.

[9] 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d. 148 (1997) (holding that the value of property retained by a debtor is the cost that the debtor would incur to obtain a like asset for the same proposed use, and, while suggesting that a simple rule of valuation was needed to serve the interests of predictability and uniformity, stating that the issue of whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property).

[10] *See In re Campell*, 234 B.R. 101, 103 (Bankr. W.D. Mo. 1999).

[11] 11 U.S.C. § 506(a)(2). Although the Debtor testified that he has used the Silverado to pick up and deliver fugitives to court in connection with his business as a bounty hunter, there has been no allegation that it was not acquired for personal, family, or household purposes, or that § 506(a)(2) does not apply.

5

value is based on an NADA printout showing a "Clean Retail Value" of $10,775.[12]

However, as the Court pointed out at the hearing, NADA states that:

> A Clean Retail vehicle will be clean and without glaring defects. Tires and glass should be in good condition. The paint should match and have a good finish. The interior should have wear in relation to the age of the vehicle. Carpet and seat upholstery should be clean, and all power options should work. The mileage should be within the acceptable range for the model year.[13]

Faced with this definition of Clean Retail Value, counsel examined Debtor Douglas Cheatham as to the condition of the Silverado. The Debtor testified that the vehicle is a Chevrolet Silverado 1500, half-ton, V-8 Fleetside pickup truck. At the time of the hearing, it had approximately 251,300 miles on it; at the time he filed his bankruptcy petition, it had approximately 246,000 miles.[14] The only special option he mentioned was aluminum alloy wheels. He said it is equipped with four-wheel drive, but the four-wheel drive is not operational. The glass is fine, but the tires need to be replaced. The paint matches, but has chips, scratches, wear, and surface rust. The interior, including the carpeting and upholstery, needs major cleaning and some repair.[15] The power options work, but the engine and transmission need some overhaul work. While the Debtor testified as to these defects, which

---

[12] *See Objection to Confirmation of Debtors' Amended Chapter 13 Plan filed May 17, 2007*, Doc. #48, filed May 23, 2007.

[13] This language was on the NADA valuation document submitted as evidence at the May 7 hearing. It may also be found at NADA's website, http://www.nadaguides.com.

[14] Contrary to what was said at the hearing, as mentioned above, the relevant time for valuation was at the time of the hearing, not at the filing of the petition.

[15] The Debtor testified that, because he sometimes used the truck for transporting fugitives, the interior was dirtier than one might normally expect.

would need to be repaired to put the car in "clean" condition, no evidence was offered as to the cost of making those repairs.

The Debtor's reliance on the Blue Book as the source of valuation is equally problematic because its "retail value" also assumes that the vehicle is in excellent condition.[16]

As evidenced by the situation presented here, neither NADA nor Blue Book provide valuations which are totally consistent with the § 506(a)(2) definition. But that does not mean that these guides are not still useful as a starting point in the valuation process. In *Rash,* the Supreme Court stated that a simple rule of valuation was needed to serve the interests of predictability and uniformity.[17] That is still so with the addition of § 506(a)(2).

As was also true previously, the NADA retail value can be the starting point in determining value, unless its is shown that that value is not useful in the area in which the car would be sold. If NADA is used as the starting point, that value must then be adjusted to account for the expense needed to bring the car to "clean" condition. Since the debtor has superior access to the evidence needed to show the defects in the car, and the cost of repair, it should be the debtor who bears the burden of offering evidence as to any such adjustments to the NADA value.[18] Then, once the adjusted NADA retail value is determined, a further adjustment must be made to reflect the fact that NADA average retail value is "the price you could expect to receive if you sold the vehicle to a private party or the dealer's asking price

---

[16] *See, In re De Anda-Ramirez,* 359 B.R. at 979.

[17] 520 U.S. at 965, 117 S.Ct. at 1886.

[18] *See,* 21B Fed. Prac. & Proc. Evid. § 5122 (2005).

on a used car lot."[19] As shown, the Code definition is the price a retail merchant would "charge," which is no doubt different from the dealer's "asking price." No empirical evidence has been offered to demonstrate the average difference between a dealer's asking price and what they ultimately end up charging at the end of negotiations. In the absence of such evidence, there is no reason to change the system currently in effect in this district, in which it is presumed that the actual value of the vehicle is 5% less than the asking price reflected in the NADA retail.

Based on the above, a rehearing will be held on July 2, 2007 at 11:15 a.m., to provide both parties with the opportunity to offer additional evidence consistent with this Order.

IT IS SO ORDERED.

.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 6/19/07

---

[19] www.nadaguides.com